## Case No. 7,948.

### In re KURTH.

### [17 N. B. R. (1878) 573.] 1

### District Court, E. D. Michigan.

INVOLUNTARY BANKRUPTCY — EXPENSES OF ASSIGNEE UNDER VOLUNTARY ASSIGNMENT.

Where a voluntary assignment, made in good faith for the benefit of creditors, is set aside by subsequent proceedings in bankruptcy, the assignee will be allowed the necessary expenses of administering the estate while in his hands, but no compensation for his own services unless the court can see clearly that the estate will not be subjected to a duplication of charges.

[Cited in Hunker v. Bing, 9 Fed. 279.]

[In the matter of Frederick A. Kurth, a bankrupt.]

On petition of the assignee for the proceeds of property in the hands of Charles E. Letts, voluntary assignee. The petition set forth that on the 6th day of December, 1877, the bankrupts made a voluntary assignment of all their property to Letts for the benefit of their creditors; that proceedings in bankruptcy were commenced on the 18th of February, 1878, and petitioner was elected assignee, and, as such, demanded of Letts the proceeds of certain property in his hands, which Letts refused to pay over without deducting his compensation and expenses. The answer of the common law assignee admits all the facts of the petition, and claims to retain one hundred and twenty-five dollars for his own services, and forty-five dollars for the services of counsel in the trial of certain insurance cases in which the bankrupt estate was interested.

Griffin & Dickinson, for petitioners.

Moore & Moore, for the common law assignee.

BROWN, District Judge. In this case, the question is distinctly presented for the first time in this district, whether a voluntary assignee is entitled to deduct from the funds in his hands his expenses in settling up the estate, as well as a reasonable compensation for his own services, before paying the same over to the assignee in bankruptcy. Such allowances have been made in a few instances by consent of the assignee in bankruptcy, but as no examination was given to the question, they cannot be considered as precedents here.

The authorities are not entirely harmonious, but in the common law courts, where-

ever the assignment is void upon its face, or was executed with an actual intent, known to the assignee, to defraud creditors, the rule seems to be well settled that the assignee stands in the position of a particeps criminis, and that the law will not countenance his contract even so far as to allow him compensation for his services. In Hastings v. Spenser [Case No. 6,201], it is said that "if the assignees were themselves participators in the fraud, or, in other words, if they undertook to execute the trusts, knowing they were fraudulent and unlawful, the law cannot recognize such services as grounds for a legal claim for compensation, and cannot treat them as creditors of the assignors." In this case they were also refused their expenses paid to counsel for resisting the claims of attaching creditors. In Bartlett v. Bramhall, 3 Gray, 257, the assignee in insolvency, under the insolvent law of Massachusetts, sued the voluntary assignee for the proceeds of the debtor's property sold by him. It was held the defendant might deduct his expenses of collection, which the plaintiff might have incurred if the defendant had not, but that he could deduct nothing for his own labor and services, which were shown by subsequent events to have been unwarranted and illegal. "The deduction for expenses is not allowed as compensation to the defendant for collecting, but because the claims collected were not worth more to anybody than the sum which the claimants could obtain therefrom after the necessary expenses of collection." In Bishop v. Hart, 28 Vt. 71, the common law assignees were sought to be charged as trustees of the debtor's property; the assignment was held to be void in law, under a statute of the state, which declared all general assignments void; but inasmuch as the assignment was not fraudulent in fact, it was held that the trustees had the right, as against other creditors, to deduct the expense of keeping, taking care of, and selling the property, as well as a reasonable compensation for other services. "Those were duties devolving upon them to discharge as assignees, and, if they have the right to sell the property for the payment of their debts, they have also the right to pay reasonable charges in the performance of those duties." In Catlin v. Foster [Case No. 2,519], a reasonable compensation for services was held a proper set-off against the claims of the assignee in bankruptcy. This decision was criticised in Re Cohn [Id. 2,966], by the district court of Kentucky, and it was determined that the voluntary assignee was entitled to nothing beyond the expense incurred in selling the property. He was not only refused compensation for his own services, but for those of his attorney. In Re Stubbs [Id. 13,557], both compensation and expenses were refused to a voluntary assignee. In Burkholder v. Stump [Id. 2,165], it was said

1 [Reprinted by permission.]

that the allowance to the voluntary assignee of his charges and expenses ought to be refused where it could not be so guarded as to prevent an injurious duplication of charges. But in Macdonald v. Moore [Id. 8,763], the voluntary assignee was allowed his disbursements, as well as three hundred dollars to cover his own services and those of his counsel.

I think there is a clear distinction, in reason as well as in the authorities, between assignments fraudulent and collusive in fact, and those made in good faith with a bona fide intent to make an equitable distribution of the property among creditors; and which are only rendered invalid by operation of law, and by the commencement of bankruptcy proceedings within a specified time. General assignments for the benefit of creditors are not ipso facto void, but are voidable only on grounds of public policy. Indeed, for some years after the passage of the bankrupt act [of 1867 (14 Stat. 517)], it was a matter of doubt whether such assignments were not valid as against bankruptcy proceedings. In many, perhaps in a majority of instances, they are assented to by the creditors, and in such case the right of the assignee to compensation is beyond all question. To say that in all cases he should be denied the reasonable expense of converting the debtor's property into money seems to me a harsh construction of law. In the case under consideration, a portion of the bankrupt's estate consisted of claims against insurance companies, which required the services of an attorney to prosecute and collect. Such expense it is reasonable to suppose would have had to be incurred by the assignee in bankruptcy, and they seem to me a proper deduction.

The right of the assignee to compensation for his own services is not so clear. He took the assignment subject to the contingency of its being avoided by the creditors. While, in a clear case, I should be disposed to allow the assignee compensation for such services as must have been performed and charged for by an assignee in bankruptcy, the general allowance of compensation to voluntary assignees would in most cases lead to a duplication of charges, to which the creditors who have seen fit to avoid the assignment, ought not to be subjected. In this case, the assignee makes a general charge of five dollars a day for twenty-five days services. Such charge would not be allowed an assignee in bankruptcy, and I think ought not to be deducted here. It is only in a clear case, where the court can see that the estate is not to be subjected to a double expense, that any compensation whatever will be allowed to a voluntary assignee.

The petition is granted, with leave to the voluntary assignee to deduct his expenses, and the amount paid his counsel.